O’Neall, J.
delivered the opinion of the Court,
The practice under 8 and 9 Wm. 3d, c. 11, sec. 6, from which our Act of 1746 seems to have been literally copied, is very clear. Tidd, in his treatise on Practice, 1117, states, “ When either party dies after interlocutory judgment, and before execution of the writ of inquiry, the sci. fa. upon this statute ought to be for the defendant, his executors or administrators, to shew cause why the damagés should not be assessed and recovered against them, and. to have the judgment of the Court thereupon.” “ The judgment upon this statute,” *133 he further remarks, “ is not entered for or against the party himself, but, as upon 17 Car. 2, c. 8, sec. 1, for or against his executors or administrators. And where the defendant dies after interlocutory,' but before final judgment, two writs of sci. fa. must be sued out by the plaintiff, before he can have execution — one before final judgment is signed, in order to make the executors or administrators parties to the record; the other after final judgment is signed, in order to give them an opportunity of pleading no assets, or any other matter in their defence.”
3 Rich. 195.
This practice, thus clearly and explicitly stated, meets our approbation, and to it these cases and all others must conform.
The effect of a final judgment, thus recovered, was considered in the Bank v. Kennerly, but much more fully in McIntosh v. Brooks, administrator of Wright, to which it refers, decided Spring Term, 1832.* In those cases, it was *134 held that the interlocutory judgment, thus carried into a final judgment, could not have the priority of a judgment, in the payment of the debts of the deceased. In the case of Mc-Intosh v. Brooks, administrator of Wright, Judge Harper, speaking of an interlocutory judgment, proceeded on by sci. fa. under the statute, says: “It must have been postponed to any final judgment, which had been obtained against the testator or intestate himself, or, I suppose, to a judgment-against the executor himself, if such had been obtained, as .of a term previous to the judgment on the sci. fa.”
Sugd. Vend. 488, Ch. 15, sec. 4.
Hiclcey v. Haytir, 6 T. R. 384.
2 Brev. Dig. 118.
The debts of the testator or intestate are to be paid accord *135 ing to the rank which they occupied at his death. The interlocutory judgment not ranking as a judgment, but merely as an authority to have the plaintiff’s damages assessed, it follows that the debt or demand, covered by it, must be treat-
ed in the rank which it occupies, as a cause of action not yet in judgment.
The plaintiffs have leave to enter up their judgments, on the sci. fa’s, according to the rules stated in this opinion.
Whole Court concurred.

Motion granted.

 Elizabeth McIntosh, executor of P. J. McIntosh, v. Wm. M. Brooks, administrator of P. J. Wright, deceased.
Before DeSaussure, Ch. at Sumterville, February Sittings, 1832.
Complainants’s testator was the surety of defendant’s intestate to Cox, who sued them both in the Common Pleas for Sumter, by writ, returnable to March Term, 1824. Order for judgment was given on the declaration in the case, on the 10th August, 1824. No order was ever made setting aside the order for interlocutory judgment at October Term, 1824, and Wright died on the 24th November, 1824. At March Term, 1825, the Judge marked on the inquiry docket, “abated as to P. J. Wright,” “ transferred as to McIntosh.” Afterwards the case was on the issue docket, against McIntosh alone, for two terms. In March Term, 1826, the record was marked “ plea withdrawn,” and damages are assessed by the Clerk. The judgment was entered up against both dfendants, on 10th May, 1826.
The only question was, whether the surety, McIntosh, had a right to be subrogated to Cox’s rights; and if he had, then whether he would rank as a judgment or simple contract creditor. Both propositions were decided affirmatively by the Chancellor, and the defendant appealed.
Harper, J. delivered the opinion of the Court of Appeals.
The only question made, and which it is necessary to consider, in this case, is whether an interlocutory judgment, irrevocable, is a judgment within the meaning of the A. A. 1789, prescribing the order in which executors shall pay debts. We concur in the view of the law taken by the Chancellor, as to the right of a surety who has paid off a debt, to have the benefit of any security which the creditor had against his principal. But there was no final judgment of Cox, against the defendant’s intestate, at the time of the death of the latter. By the executor’s Act, the debts are to be paid in order of priority, as they existed at the time of the testator’s or intestate’s *134 death. Unless the interlocutory judgment, therefore, is to rank as a judgment within the meaning of the Act, Cox had not the security of a judgment against Wright’s estate, and complainant cannot be subrogated to that security. ,
In giving construction to the Act, we must have reference to the law as it stood before. Before the Act, executors and administrators were bound to pay off judgments, the oldest first, in preference to bonds or simple contract debts. A judgment obtained against the executor himself, gained a preference over specialty and simple contract debts, and was ranked as a judgment. In this respect the statute has made an alteration; in other respects it seems to have enacted the common law.
Before the stat. 29 C. 2, it is commonly said that, by a fiction of law, all judgments were supposed to be judgments of the first day of the term at which they were obtained. This appears from the recital of the statute itself; “ Whereas it hath been found mischievous, that judgments in the King’s Courts, at Westminster, do, many times, relate to the first day of the term, whereof they are entered, or to the day of the return of the original, or filing bail ; and bind the defendant’s lands, from that time, although, in truth, they were acknowledged, or suffered, or signed in the vacation time after the said term,’’ &c. In saying that judgments have relation to the first day of the term of which they are entered, final judgments must of course be intended. This cannot relate to interlocutory judgments. It was never supposed, I believe, that lands were bound from the term, as of which an interlocutory judgment was entered. The statute has relation only to lands, and after the passing of it, I suppose executors and administators were still bound to regard judgments as of the first day of the term, whereof they were entered, until the stat. 4 and 5 W. and M. c. 20. By that statute, which has not been adopted in this State, and which, by the English Courts, has been construed to extend to executors and administrators as well as to lands, judgments were required to be signed and docketted as by the statute of frauds; and if this were not done they ranked only as simple contract debts. Before the Act of 1746, which we have taken from the stat. 8 and 9 W. 3, c. 11, it is plain that an executor could not have regarded an interlocutory judgment as a judgment entitled to priority over specialties and simple contracts. By the death of the testator or intestate after interlocutory, and before final judgment, the suit was at an end, and the creditor *135 had nothing but his cause of action. That Act providing that where a defendant dies after interlocutory, and before final judgment, the plaintiff may bring a scire facias against his executor or administrator, is silent as to the rank which the judgment shall have in the course of administration. It must have been postponed to any final judgment which had been obtained against the testator or intestate himself, or, I suppose, to a judgment against the executor himself, if such had been obtained as of a term previous to the judgment on the scire facias. Then the Act of 1789, providing for the payment of judgments,' mortgages and executions, the oldest first, must relate only to such as were before regarded as judgments against the testator or intestate, and makes no alteration as to the mode of determining the seniority. No such question can have arisen in England since the stat. 3 and 4 W. and M. requiring judgments to be docketted. Nor do I suppose that any such could have arisen before judgments, whether against the testator or executor, had priority according to date, and if the views which I have taken be correct, according to the date of the final judgment; this being the first day of the term of which the judgment was entered. If judgment were confessed by the testator, and entered up after his death, this, I suppose, would relate to the previous term.
Some light may be thrown on the subject by Metcalf’s case, 11 Co. 38. The question was, whether a writ of error lay on the judgment quod computet in an action of account. It was determined on the words of the writ of error, that the judgment spoken of must mean the final judgment. “ When a thing (whereof there are divers degrees and qualities) is indefinitely mentioned in a writ, count or record, the principal thing and the most worthy shall be intended and this was the final judgment. So, I suppose, when a statute, which is a record, speaks of a judgment, it is added that it must mean not only the principal judgment, but the entire judgment, when the whole matter is determined. That is the judgment by which the defendant is charged with the account, which is the effect of his suit, and the other award is but accessary to it.— As in trespass, &c., a writ of inquiry of damages, &e., “ which are but awards of the Court, and are but interlocutory and not definitive.” Such is the rule with respect to decrees off the Court of Equity. Decrees in Equity rank as judgments ; but a decree quod computet, is not, for this purpose, regarded as a decree. The decree of the Chancellor must therefore be reversed.
Johnson, J. and O’Neall, J. concurred.